699 So.2d 1352 (1997)
The STATE of Florida and the Several Property Owners, Taxpayers and Citizens of the State of Florida, Including Non-Residents Owning Property or Subject to Taxation Therein, and Others Having or Claiming any Right, Title or Interest in Property to be Affected by the Issuance of the Bonds Herein Described, or to be Affected Thereby, Appellants,
v.
INLAND PROTECTION FINANCING CORPORATION, a not for profit public benefits corporation, Appellee.
No. 90332.
Supreme Court of Florida.
October 2, 1997.
*1353 William N. Meggs, State Attorney and C.W. Goodwin, Assistant State Attorney, Second Judicial Circuit, Tallahassee, for Appellant.
Kenneth M. Myers and Peter L. Dame of Squire, Sanders & Dempsey L.L.P., Miami, for Appellee.
PER CURIAM.
We have on appeal a decision of the trial court validating revenue bonds issued by the Inland Protection Financing Corporation ("the Corporation"), a not-for-profit public benefits corporation. We have jurisdiction. Art. V.S 3(b)(2), Fla. Const.
The Corporation filed a complaint for bond validation in the Second Judicial Circuit Court, Leon County, on January 8, 1997. In its answer, the State Attorney for the Second Judicial Circuit challenged the sufficiency of the complaint as violative of section 75.02, Florida Statutes (1995), and article VII of the Florida Constitution. The trial court approved the bond issuance in its order for final judgment for bond validation, dated March 26, 1997.

PROCEEDINGS BELOW
In its findings of fact and conclusions of law, the trial court outlined the history of the proceedings to that point. In 1996, the Florida Legislature enacted chapter 96-277, Laws of Florida, which, among other things, substantially revised the laws that govern the state's underground petroleum storage tank cleanup program. See §§ 376.30-.3195, Fla. *1354 Stat. (1995 & Supp.1996) (hereinafter referred to as "the Act"). The purpose of the revisions was to address the increasing problem of contamination caused by pollutant discharges into the state's groundwaters and inland surface waters and to provide for expeditious restoration or replacement of potable water systems where health hazards exist.
Through the Department of Environmental Protection ("the Department"), the State assists property owners with the payment of contamination cleanup costs due to discharges from underground petroleum storage tanks. Under the Act, the Department considers and approves applications for site cleanup reimbursement based on certain site selection and cleanup criteria geared to the degree to which human health, safety, or welfare may be affected. Since 1989, reimbursements have been limited to the unencumbered funds appropriated to the Inland Protection Trust Fund ("the Trust Fund") created by section 376.3071(3). This source of money has proven insufficient to meet the approved claims; a backlog of claimed but unpaid reimbursements amounted to an estimated $551,558,985 as of December 31, 1996. Out of that sum, an estimated $450 million in reimbursement claims are expected to receive approval and become "existing reimbursement obligations" as defined in the Act.
In 1996, the Legislature created the Corporation for the specific purpose of assisting the Department in financing the rehabilitation of petroleum contamination sites by providing a mechanism for bond issuances or other evidence of indebtedness, with the resulting proceeds applied to all or a portion of existing reimbursement obligations. The Act authorizes the Corporation to enter into one or more service contracts with the Department under which the Department will pay to the Corporation, subject to annual appropriation by the Legislature, such funds as are available to the Department to pay debt service on bonds issued by the Corporation.
The Corporation, pursuant to section 376.3075(1), intends to issue bonds or other evidence of indebtedness payable from amounts paid by the Department under a service contract which will be entered into between the parties. The Corporation's bonds are limited by the Act to terms of not more than six years, and the aggregate amount payable under the service contract may not exceed $65 million in any one state fiscal year. The amount payable under the contract is subject to annual appropriation by the Legislature. Under the Act, the service contract expires after ten years and the Corporation shall terminate on July 1, 2011.
The Corporation's Board of Directors adopted a resolution on November 19, 1996, authorizing and approving both the issuance of the bonds and the execution of the service contract. The bond financing plan made available by the Corporation is not a mandatory but rather an optional financing mechanism that the Department may or may not use at its discretion. The Legislature does not mandate use of the program, and therefore no function or delegation of authority of the Department or the State is mandatorily transferred to the Corporation.
From these facts, the trial court concluded that the Corporation's bond issuance will not conflict with article VII, section 11(d) of the Florida Constitution. The bonds are not "state bonds." The Corporation is a public benefits corporation, a legal entity separate and distinct from the State and its agencies. The bonds are not to be issued by the State or its agencies. Even if it should be deemed that the bonds are to be issued by the State or its agencies, they will be issued for state fixed capital outlay projects authorized by law or purposes incidental thereto.
The trial court also concluded that no state tax revenue is pledged to payment of the bonds. The Corporation's bonds shall not constitute a debt or obligation of the State or a pledge of the State's faith and credit or taxing power, but rather shall be payable from and secured by payments made by the Department under the service contract pursuant to section 376.3071(4)(o), which payments are subject to annual appropriation.
Issuance of the bonds does not require a vote of the electorate under any statute or constitutional provision. The bond's issuance does not contravene article VII, section 10 of the Florida Constitution since the Legislature *1355 has found that the remediation of contamination in the state's surface and ground waters is a paramount public purpose. Finally, the trial court concluded that the State Attorney's answer showed no just cause why the bond issuance should not be validated. Accordingly, the court validated the Corporation's bond issuance.

LAW AND ANALYSIS
This Court has consistently reaffirmed that its scope of review is limited to: (1) determining whether the public body has the authority to issue bonds; (2) determining if the purpose of the obligation is legal; and (3) ensuring that the bond issuance complies with the requirements of law. Kessler v. City of Winter Park, 696 So.2d 761 (Fla. 1997); Poe v. Hillsborough County, 695 So.2d 672 (Fla.1997); Noble v. Martin County Health Facilities Auth., 682 So.2d 1089 (Fla.1996). The State Attorney asserts that none of those conditions have been satisfied and, therefore, this Court should reverse the trial court's order validating the Corporation's bond issuance.

STANDING
Regarding the State Attorney's standing argument, section 75.02, Florida Statutes (1995), provides that:
Any county, municipality, taxing district or other political district or subdivision of this state, including the governing body of any drainage, conservation or reclamation district, and including also state agencies, commissions and departments authorized by law to issue bonds, may determine its authority to incur bonded debt or issue certificates of debt....
(Emphasis added). While a "public benefits corporation" may not exactly conform to any of the above issuing bodies, the Corporation, in section 376.3075(3)(f), Florida Statutes (Supp.1996), is authorized to:
Borrow money and issue notes, bonds, certificates of indebtedness, or other obligations or evidences of indebtedness necessary to pay the backlog or to reimburse moneys from the Inland Protection Trust Fund....
Subsection (5) of the same enacting statute provides that the Corporation "may issue and incur notes, bonds, certificates of indebtedness, or other obligations or evidences of indebtedness payable from and secured by amounts payable to the corporation by the department under a service contract ... for the purpose of paying, purchasing, or settling existing reimbursement obligations." Finally, subsection (10) mandates that the Corporation "shall validate obligations to be incurred to subsection (5) and the validity and enforceability of any service contracts providing for payments pledged to the payment thereof by proceedings under chapter 75." (Emphasis added). Therefore, no dispute exists as to whether the Corporation meets the essential requirement of standing: legislative authorization to issue bonds. Accordingly, we conclude that the Corporation is a proper plaintiff to bring the bond validation action.[1]

AUTHORITY TO ISSUE BONDS
For the same reasons, we find that the Corporation has the authority to issue bonds. The authorizing statute, section 376.3075,[2] details the Corporation's bond issuing *1356 authority in three separate subsections and the bond validation process in a fourth subsection. Therefore, we find that the Corporation acted within its authority in issuing the bonds.
As provided by statute, the Corporation's purpose is to finance the rehabilitation of sites contaminated by underground petroleum tank leakage and to pay, purchase, and settle the Department's reimbursement obligations existing as of December 31, 1996. § 376.3075(1), Fla. Stat. (Supp.1996). The legislature found fulfillment of that purpose "promotes the health, safety, and general welfare of the people of the state and serves as essential governmental functions and a paramount public purpose." § 376.3075(8), Fla. Stat. (Supp.1996).
Since the "legislature has clearly delineated the public purpose served by the bonds," State v. Florida Development Finance Corp., 650 So.2d 14, 19 (Fla.1995), that finding is presumptively valid unless this Court determines it to be "so clearly erroneous as to go beyond the power of the legislature." Id. at 19. Accordingly, facilitating the cleanup and restoration is a legitimate public purpose within the legislature's prerogative.

USE OF STATE'S CREDIT
The State Attorney next argues that the bond issuance violates the Florida Constitution by lending the state's credit to a private entity. A similar issue was addressed in State v. Florida Development Finance Corp., 650 So.2d 14 (Fla.1995). There, the Legislature had established the Florida Development Finance Corporation (FDFC) to stimulate the state's economic environment primarily through the financing of small businesses. Id. at 15. Thus, the intended beneficiary of any bond issuance was private enterprise.
Nevertheless, this Court found that the proposed bonds did not pledge the public credit or taxing power since the authorizing statute, the bond resolution, and the guaranty agreement "all put the bondholders on notice that FDFC's obligation is limited to several specifically defined revenue sources." Id. at 18. Thus, this Court concluded that the bondholders could not compel a levy of taxes to satisfy the bond obligations. Id. Accordingly, since the bonds did not pledge public credit, it was immaterial that the primary beneficiaries of the bond issuance were private entities. Id. at 19.
*1357 In this case, section 376.3075(4), the service contract, and the Corporation's Master Resolution all unambiguously put potential bondholders on notice that the bonds do not constitute a debt or obligation of the state, and the only revenue source for the bonds is an annual appropriation by the Legislature. Therefore, since the bonds are not supported by pledge of a tax revenue source, they are not payable from any such source and no bondholder could initiate judicial action to levy taxes in satisfaction of the debt represented by the bonds. See State v. Miami Beach Redevelopment Agency, 392 So.2d 875, 898 (Fla.1980) (upholding constitutionality of bonds where bondholder would have no recourse to compel by judicial action the levying of ad valorem taxation if bond obligations were unmet).
The same reasoning undercuts the State Attorney's third argument, that the bond issuance violates article VII, section 11(d)[3] of the Florida Constitution because the bonds are obligations of the state payable from tax revenues. Moreover, since we conclude that the Corporation is not a state agency,[4] its bonds are not "state bonds" and the limitations of article VII, section 11(d) are inapplicable.
Likewise, the State Attorney's contention that reimbursing cleanup costs does not come within the meaning of "state fixed capital outlay projects" as contemplated in article VII, section 11(d) is unconvincing since the Corporation is not a state agency. Even were we to find that the Corporation is a state agency, we would conclude that the restoration of contaminated lands and water for protection and conservation is a capital project. This would be commensurate with the public purpose served by the Florida Hurricane Catastrophe Fund Finance Corporation: "enabling insurers to pay the claims of policyholders to assure that policyholders are able to pay the cost of construction, reconstruction, repair, restoration, and other costs associated with damage to property of policyholders" from a hurricane. § 215.555(6)(a) 2., Fla. Stat. (Supp.1996) (emphasis added).
Accordingly, we affirm the trial court's final judgment of bond validation.
It is so ordered.
KOGAN, C.J., and OVERTON, SHAW, GRIMES, HARDING, WELLS and ANSTEAD, JJ., concur.
NOTES
[1] The State Attorney raised this same argument in opposition to the proposed bond issuance in State v. Florida Hurricane Catastrophe Fund Finance Corp., 699 So.2d 685 (Fla. 1997). That case also involved a public benefits corporation created by the legislature for the purpose of reimbursing homeowners for hurricane damages. § 215.555(6)(c), Fla. Stat. (Supp.1996). This Court rejected the argument and validated the bonds. 699 So.2d at 686-687.
[2] Section 376.3075 provides in part as follows:

(1) There is hereby created a nonprofit public benefit corporation to be known as the "Inland Protection Financing Corporation" for the purpose of financing the rehabilitation of petroleum contamination sites pursuant to ss. 376.30-376.319 and the payment, purchase, and settlement of reimbursement obligations of the department pursuant to s. 376.3071(12), existing as of December 31, 1996. Such reimbursement obligations are referred to in this section as existing reimbursement obligations. The corporation shall terminate on July 1, 2011.
....
(3) The corporation shall have all the powers of a corporate body under the laws of the state to the extent not inconsistent with or restricted by the provisions of this section, including, but not limited to, the power to:
....
(f) Borrow money and issue notes, bonds, certificates of indebtedness, or other obligations or evidences of indebtedness necessary to pay the backlog or to reimburse moneys from the Inland Protection Trust Fund used pursuant to subsection (6).
....
(4) The corporation is authorized to enter into one or more service contracts with the department pursuant to which the corporation shall provide services to the department in connection with financing the functions and activities provided for in ss. 376.30-376.319... In compliance with this subsection and s. 287.0582, the service contract shall expressly include the following statement: "The State of Florida's performance and obligation to pay under this contract is contingent upon an annual appropriation by the Legislature."
(5) The corporation may issue and incur notes, bonds, certificates of indebtedness, or other obligations or evidences of indebtedness payable from and secured by amounts payable to the corporation by the department under a service contract entered into pursuant to subsection (4) for the purpose of paying, purchasing, or settling existing reimbursement obligations ... Any such indebtedness of the corporation shall not constitute a debt or obligation of the state or a pledge of the faith and credit or taxing power of the state, but shall be payable from and secured by payments made by the department under the service contract pursuant to s. 376.3071(4)(o).
(6) Upon the issuance of debt obligations by the corporation pursuant to subsection (5) for the payment, purchase, or settlement of existing reimbursement obligations, amounts on deposit in the Inland Protection Trust Fund shall not be available for the payment, purchase, or settlement of existing reimbursement obligations to the extent proceeds of such debt obligations are available for the payment of such existing reimbursement obligations ...
....
(8) The fulfillment of the purposes of the corporation promotes the health, safety, and general welfare of the people of the state and serves as essential governmental functions and a paramount public purpose.
....
(10) The corporation shall validate obligations to be incurred pursuant to subsection (5) and the validity and enforceability of any service contracts providing for payments pledged to the payment thereof by proceedings under chapter 75.....
(Emphasis added.)
[3] "Revenue bonds may be issued by the state or its agencies without a vote of the electors to finance or refinance the cost of state fixed capital outlay projects authorized by law, and purposes incidental thereto, and shall be payable from funds derived directly from sources other than state tax revenues." Art. VII, section 11(d), Fla. Const.
[4] This Court recently affirmed the trial court's finding that another legislatively created "public benefits" corporation, the Florida Hurricane Catastrophe Fund Finance Corporation, was not a state agency. Florida Hurricane Catastrophe Fund, 699 So.2d at 686.